[No. 879.]

## AMBROSE GAUDETTE, RESPONDENT, *v.* JOHN ROEDER ET AL., APPELLANTS.

COMPLAINT ON INDEMNITY BOND—SUFFICIENCY OF.—Roeder brought an attachment suit against Guertin. Travis, as sheriff, levied the attachment upon certain personal property. Gaudette gave Travis notice that he owned the property. Roeder required the sheriff to retain said property, and gave him an indemnifying bond, with Glissan and Sultan as sureties. The property was retained by the sheriff, who afterwards sold the same at sheriff's sale, under execution in the suit of *Roeder* v. *Guertin.* Gaudette brought an action against Travis, to recover the said personal property or its value, and obtained judgment. An execution was issued upon this judgment, and returned unsatisfied. No part of the judgment has been paid. The bond of indemnity was assigned to Gaudette by the sheriff. Gaudette brought this action against Roeder, Glissan and Sultan to recover the amount due on his judgment against Travis. *Held,* that a complaint properly alleging these facts stated a good cause of action.

SECTION 591 OF CIVIL PRACTICE ACT CONSTRUED—SURETIES—BOND OF INDEMNITY.—In construing the provisions of section 591 of the civil practice act (1 Comp. L. 1651): *Held,* that the provisions of said section could only be invoked by the sheriff; that an order substituting the sureties as defendants in place of the sheriff was utterly null and void.

APPEAL from the District Court of the Seventh Judicial District, Lincoln County.

The facts are stated in the opinion.

*Bishop & Sabin,* for Appellants.

I. The terms of the· bond could not be changed by a parol agreement between Roeder and Travis, neither could Roeder and Travis enter into any agreement to bind the defendants Glissan and Sultan without their consent. (*Quillen* v. *Arnold,* 12 Nev. 234; *Miller* v. *Stewart et al.,* 9 Wheat. 680; *Bowers* v. *Beck et al.,* 2 Nev. 152; 10 Johnson, 180.)

II.· The judgment of *Gaudette* v. *Glissan et al.* is a perfect bar to this action. (*Dutil* v. *Pacheco et al.,* 21 Cal. 438; Freeman on Judgments, secs. 247, 248, 249, 256, and cases there cited; *J. B. Chase and Thos. DeVries* v. *Chas. H. Christianson and R. Murdock et al.,* 41 Cal. 253; Freeman on Judgments, p. 207; *Jackson* v. *Lodge,* 36 Cal. 28; *Boggs* v.·

*Clark*, 37 Id. 236; Herman on Law of Estoppel, 159, 163, 164, 165, 175, 176, 179, 180, 183, 185, 187; *Paul* v. *Armstrong*, 1 Nev. 82.) That judgment is now final. (*Cal. St. Tel. Co.* v. *Patterson*, 6 Nev. 150; *State* v. *Logan*, 1 Id. 509.) Even if erroneous, that judgment had long before the commencement of this action become valid by lapse of time. (*Bullion M. Co.* v. *Croesus M. Co.*, 3 Nev. 336.)

*Fuller & Sawyer*, also for Appellants.

I. A bond taken by an officer without authority is void. (*Benedict* v. *Bray*, 2 Cal. 251; *Stark* v. *Raney*, 18 Cal. 622.) The bond sued upon was not a statutory bond of indemnity. It was void at common law as being an indemnification for the consequences of an illegal act, and therefore contrary to public policy. (1 Bouvier's Law Dic. 331; title "Consideration" and cases cited; *Servanti* v. *Lusk*, 43 Cal. 238; 1 Parsons on Cont. 456 *et seq.*)

II. To recover on a bond, a full compliance with the conditions must be shown. (*Osborn* v. *Elliott*, 1 Cal. 337; *People* v. *Jackson*, 24 Id. 632; *Hatch* v. *Peel*, 22 Barb. 580; *Couch* v. *Ingersoll*, 2 Pick. 292; *Kane* v. *Hood*, 13 Pick. 281.

*A. B. Hunt*, for Respondent.

I. The demurrer was properly overruled. (*Grain* v. *Aldrich*, 38 Cal. 514.)

II. A void judgment is in legal effect no judgment. (Freeman on judgments, 117, and cases cited.) Where the court has no jurisdiction either of the subject-matter or of the parties, its judgment is absolutely void. (*Hahn* v. *Kelly*, 34 Cal. 402; *Campbell* v. *McCahan et al.*, 41 Ill. 45; *Hollingsworth* v. *Bagley*, 35 Tex.) The court had no power on the motion of Travis to order judgment to be entered in favor of Gaudette against the sureties on the bond. (*Cohn* v. *Barrett*, 5 Cal. 210; *Turner et al.* v. *Tuolumne Water Co.*, 25 Cal. 400; *Leak* v. *Blasdel*, 6 Nev. 40; *State ex rel. Wall* v. *Blasdel*, 4 Nev. 241.) Hence that judgment is no bar to the present action . (*Earl* v. *Bull*, 15 Cal. 425; *Grey et al.* v. *Dougherty et al.*, 25 Id. 273; *Hardenbergh* v. *Bacon*, 33 Id. 375; *Mahoney* v. *Vanwinkle*, 33 Id. 458; *Carey* v. *P. and C.*

*Petroleum Co.*, 33 Id. 698; *Boggs* v. *Clark*, 37 Id. 238; *Taylor* v. *Castle*, 42 Id. 370; *Nickerson* v. *Cal. Stage Co.*, 10 Id. 521; *Caperton* v. *Schmidt*, 26 Id. 513.)

III. The bond sued on is a good bond.   (*White* v. *Pratt*, 13 Cal. 524; *Jones* v. *Childs*, 8 Nev. 121.)

By the Court, LEONARD, J.:

On the sixteenth day of May, 1874, an action was pending in the district court of Lincoln county, wherein defendant John Roeder was plaintiff and one P. Guertin was defendant.   Roeder caused a writ of attachment to be issued and delivered to one Travis, sheriff of the county, who attached about three hundred cords of wood, as the property of Guertin.   Plaintiff served a written notice upon sheriff Travis, claiming the wood as his property, and demanding its return to him.   Roeder required the sheriff to retain the property attached, and thereupon the defendants executed and delivered to him an indemnifying bond, of which the following is a copy, so far as its contents are important:

Know all men by these presents, that we, John Roeder, as principal, of Pioche, Lincoln county, Nevada, and W. C. Glissan and Louis Sultan, of the same place, as sureties, are held and firmly bound unto W. S. Travis, sheriff of said Lincoln county,   *   *   *   in the sum of one thousand five hundred dollars,   *   *   *   to be paid to the said sheriff or his   *   *   *   assigns, for which payment well and truly to be made, we bind ourselves,   *   *,   *   jointly and severally, firmly by these presents.

Sealed with our seals, and dated this sixteenth day of May, 1874.

Whereas, under and by virtue of a writ of attachment, issued out of the district court of the seventh judicial district, Lincoln county, state of Nevada, in a certain action wherein the above bounden John Roeder is plaintiff, and P. Guertin is defendant, against said defendant, directed and delivered to said W. S. Travis, sheriff of the county and state aforesaid, the said sheriff was commanded to attach and safely keep all of the property of said defendant within his county not exempt from execution, or so much

thereof as may be sufficient to satisfy the plaintiff's demand, amounting to seven hundred and four dollars United States gold coin, as therein stated; and the said sheriff did, thereupon, attach and take into his possession the following personal property, to wit: three hundred cords of wood, more or less; * * * and whereas, upon the taking of said goods and chattels, by virtue of the said writ, one Ambrose Gaudette claimed the said goods and chattels as his property, by a written notice; and whereas, the said plaintiff, notwithstanding said claim, requires the said sheriff to retain the said property under said writ of attachment and in his custody; Now, therefore, the condition of this obligation is such that if the said above bounden John Roeder, W. C. Glissan and Louis Sultan * * * shall well and truly indemnify and save harmless the said sheriff * * * of and from all damages, expenses, costs and charges, and against all loss and liability which he, the said sheriff, his heirs * * * or assigns shall sustain, or in any wise be put to, for or by reason of said attachment, seizing, levying, taking or retaining by the said sheriff in his custody under said attachment, of the said property claimed as aforesaid, then the above obligation to be null and void; otherwise to remain in full force and effect.

Signed, sealed and delivered in presence of D. Corson.

JOHN ROEDER,     [Seal.]
WM. C. GLISSAN,  [Seal.]
LOUIS SULTAN.    [Seal.]

The sureties justified in proper form. After receiving the above undertaking, the sheriff held the property under the writ until about June 4, 1874, when it was sold to satisfy the judgment obtained in the action wherein it had been attached.

On or about May 21, 1874, plaintiff Gaudette brought suit in said court against Travis to recover the same wood, or its value if the property could not be had, and obtained judgment for its return or its value, to wit: nine hundred dollars, and four hundred and twenty-five dollars and twenty-five cents costs. Travis appealed to this court (11

Nev. 149), wherein the judgment was affirmed. Thereafter execution upon said judgment was issued about December 20, 1876, and placed in the hands of the then sheriff of Lincoln county for service, who returned the execution with his return indorsed thereon, to the effect that said wood could not be found, and that Travis, defendant therein, had no property within the county. The execution was returned wholly unsatisfied, and no part of said judgment or costs has been paid. Plaintiff alleges that on the fifth day of June, 1877, Travis, for a valuable consideration, sold, assigned and delivered said undertaking and all his right, title and interest therein to him, and that plaintiff now owns and holds the same. The allegations of the complaint last stated only are denied by the answer. On the sixteenth day of June, 1877, plaintiff demanded of defendants payment of the judgment and costs in the case of *Gaudette* v. *Travis.* No part having been paid, this action was commenced on the eighteenth of June, 1877, to recover the amount of the penalty stated in the undertaking, fifteen hundred dollars. The cause was tried by the court and judgment rendered for plaintiff for the full amount claimed in the complaint, besides costs. This appeal is taken from that judgment and the order denying defendants' motion for a new trial.

Several points urged in the court below on motion for a new trial were waived at the oral argument in this court, and they will not be considered, although they are re-stated in one of the briefs of counsel for appellant. In the first place, they are destitute of merit; and, second, they were confessed to be so at the argument, as before stated.

The first assignment of error is the order of the court overruling defendants' general demurrer to the complaint.

All the facts first stated herein, with one exception, to and including defendants' failure to satisfy plaintiff's judgment against Travis, were amply set out in the complaint before amendment; and the only change thereafter made was the insertion of an allegation at the trial, that Travis, as sheriff, sold the wood under an execution issued in said case of *Roeder* v. *Guertin,* on or about June 3, 1874, which allegation was not denied by defendants.

It is urged by counsel for appellants in another part of their briefs, that the consideration for the undertaking was, that Travis, as sheriff, should retain the property under the writ of attachment. Before and after amendment it was alleged in the complaint, "that Travis, as such sheriff, in obedience to the requirements of said Roeder, * * did retain and keep in his possession said personal property, under and by virtue of said writ of attachment." In other words, at the time the demurrer was overruled, the complaint showed precisely what defendants' counsel now claim is necessary, before their clients can be held liable upon the undertaking. The court did not err in overruling the demurrer.

But it is said that the complaint did not state a cause of action after amendment, and that the judgment is not sustained by the pleadings and evidence, because the consideration for, and the condition of, the undertaking was that Sheriff Travis should retain the property under the attachment, while the complaint after amendment contained the allegation, and the evidence showed, that he did not so retain it, but did dispose of it without the consent of the sureties Glissan and Sultan. These objections can be considered together. The evidence on the part of plaintiff, as well as the allegations of the complaint after amendment, not denied by defendants, showed that the sheriff, Travis, retained the property attached until after Roeder obtained judgment against Guertin, when he sold it under execution issued in that case, for the benefit of Roeder. The rule undoubtedly is, that the liability of a surety cannot be extended beyond the terms of his contract, and that, if without his consent the contract is changed he is released.

But it is also true that in ascertaining the terms of a contract which is made under and in respect to a law, the law itself becomes a part of the contract. Let us apply these rules to the case in hand. After receiving written notice from Gaudette that the latter claimed the wood and demanded its release from attachment, Travis had the right to demand and receive indemnity, or release the levy. (C. L. 2968; Freeman on Executions, sec. 275; Herman on Executions, sec. 154.)

The process of attachment creates a lien upon property of the debtor that is seized thereunder, and it is thereafter held as security for the satisfaction of any judgment that may be obtained by the plaintiff in the action. (Sec. 123, Civ. Prac. Act.) But the levy may be abandoned by the direct act of the officer in giving up the property when his reasonable demand for indemnity has been refused.

Under section 135 of the civil practice act, if judgment is recovered by the plaintiff after attachment, the sheriff is required to " satisfy the same out of the property attached by him which has not been delivered to the defendant." At the time this undertaking was given, defendants knew, that if the property attached was not released before judgment, it would be the sheriff's official duty to sell the same in satisfaction of such judgment as Roeder might obtain, unless otherwise ordered by the judgment-creditor. The only object Roeder had in causing the property to be attached was to apply it to the satisfaction of any judgment he might obtain, and neither of the defendants could have had any other object in giving the undertaking. The statute permits no other object. So, the defendants Glissan and Sultan knew that the property was liable, at least, to be sold under execution, if Roeder should obtain judgment, and that it might not be "retained " by the sheriff under the writ of attachment after judgment. They had no reason to expect, nor did they expect, it would be longer kept under that writ. Under the circumstances and for the purposes stated they gave the undertaking, requiring the sheriff to retain the property under the writ of attachment;" that is, to hold it as security for any judgment Roeder might obtain, and thereby continue the lien already secured, to the end that, after judgment, it might be sold in satisfaction thereof, as required by law.

It was retained under the writ just as long as the statute permitted, under and in view of which defendants contracted. One other assignment, only, requires consideration.

It is alleged in the answer, " that on the eleventh day of March, 1875, a judgment was rendered and entered in said

district court in favor of said plaintiff, Ambrose Gaudette, and against these defendants, John Roeder, William C. Glissan and Louis Sultan, and upon the same subject-matter embraced in this action, and upon which the complaint of plaintiff in this action is based; and that said judgment now remains of record in said court, and has never been reversed or set aside, vacated or discharged, as will appear by the records of said court, reference to which is hereby made."

The facts admitted by the answer and proven upon the trial in support of these allegations were as follows:

On the twenty-seventh day of February, 1875, plaintiff Gaudette recovered judgment in said court against Travis for a return of the wood attached in the case of *Roeder* v. *Guertin*, and described in the undertaking in question, or for its value if a return could not be had, found to be nine hundred dollars, besides costs taxed at four hundred twenty-five dollars and twenty-five cents.

On the sixth day of March, 1875, evidently intending to proceed under section 591 of the practice act (C. L. 1652), Travis, by his attorneys, gave written notice to defendants, Roeder, Glissan and Sultan, " that on the twenty-seventh day of February, 1875, Gaudette recovered judgment in said court against Travis, in the cause entitled *Gaudette* v. *Travis*, for the sum of nine hundred dollars, and four hundred twenty-five dollars and twenty-five cents costs, and that Travis, by his attorneys, on the eleventh day of March, 1875, at the court-room * * * would move the court to order judgment in said cause to be entered against said Roeder, Glissan and Sultan, and each of them, for the amount of said judgment and costs."

On the eleventh of March, after receiving testimony and hearing argument, the court ordered that judgment in said cause of *Gaudette* v. *Travis* be entered against Roeder, Glissan and Sultan. The persons last named were substituted for Travis, and the judgment now pleaded in bar to this action was entered in the following form:

" *Ambrose Gaudette* v. *William C. Glissan, Louis Sultan and John Roeder*. Whereupon * * * it is ordered and

adjudged that said plaintiff do have return from said Louis Sultan, William C. Glissan and John Roeder of * * * cords of wood, or in case a return cannot be had, that said plaintiff do have and recover of and from said Sultan, Roeder and Glissan its value, to wit, nine hundred dollars, * * * and all costs of said action, taxed at four hundred and twenty-five dollars and twenty-five cents, and the costs of this motion, taxed at twenty-eight dollars and fifty cents."

This judgment was docketed in the same form—Gaudette was entered as "judgment-creditor," and Roeder, Glissan and Sultan as judgment-debtors."

On the twenty-second day of July, 1876, after notice, defendants Roeder, Glissan and Sultan, by their attorney, moved for a perpetual stay of execution in the case wherein they had been substituted as defendants in place of Travis, on the grounds, in part, that the so-called judgment against them was absolutely void, because the record of the proceedings showed that Gaudette was not a party thereto, either as plaintiff or defendant; that Gaudette was not the actor in said proceedings; neither was he served with any summons, notice or process known to the law to bring him within the jurisdiction of said court; that Gaudette was a stranger to said proceedings, and did not, by counsel or otherwise, appear therein; that Gaudette was not, and had never been, sheriff, either *de jure* or *de facto*, of Lincoln county; that the statutory provisions under which said pretended judgment was obtained could only be invoked by a sheriff." * * * The court agreed with the views then entertained by counsel for defendants, and perpetually stayed execution in that case. On the same day, July 22, but whether before or after the order staying execution we are not advised, Travis, by his attorneys, moved the court for leave to amend that judgment by substituting Travis in place of Gaudette, alleging mistake. The motion was denied by the court on a subsequent day.

It is unnecessary to decide whether or not, under the circumstances stated, defendants are estopped by the record, to deny the validity of plaintiff's judgment against Travis, or to set up the substituted judgment in bar; for the reason

that the so-called judgment last mentioned is plainly absolutely void, and has never been anything else. This appears upon the face of the records introduced in evidence by the defendants themselves, as well as by facts admitted on both sides, to be true. In the first place, the statute did not provide for or permit the substitution of defendants in place of Travis in the original judgment. It only permitted the court, after notice to the sureties, to order a separate judgment against them in favor of the sheriff, for an amount equal to that recovered against him by Gaudette. This special statutory proceeding is provided for the sheriff's protection, but nothing could be done under it to affect the judgment recovered by Gaudette. He had no interest in the proceeding, and could not be injured or benefited thereby. The judgment obtained by him was against Travis, and without his consent or knowledge, so far as the record shows, and without any authority of law so to do, the defendants in this action were substituted for his judgment-debtor. Such substitution, if legal and with Gaudette's consent, might be beneficial to him in this suit; but were such the case, the same result would follow, for it was unwarranted by law, and is not voidable merely, but is absolutely void, nor did it in any manner affect the judgment recovered by Gaudette against Travis.

The court had no jurisdiction over the subject-matter of such a proceeding, unknown at common law and not permitted by statute. It had no more power to substitute the sureties for Travis than it had to insert the names of other persons. For such a purpose, it had no jurisdiction over the persons of the defendants, and over Gaudette it had none for any purpose. The judgment pleaded in bar can bar no proceeding nor bind any person. (Freeman on Judgments, secs. 117, 118.)

The judgment and order appealed from are affirmed.